143803 Arturo Velasco Tijero v. Loretta E. Lynch Arguments not to exceed 15 minutes per side Mr. Weigel for petitioner Good morning Judge Gibbons, Doug Weigel for the petitioner Good morning Judge Rodgers, Judge Guy This is a transitional immigration case going back to the IHRA, IHRA of 1996 and frankly I don't think we have any more of these lying around I haven't seen one in ages The petitioner's counsel raised two issues for the court's consideration Unless the court has questions, I really don't intend to spend a whole lot of time on the abuse of discretion on the remand of the motion to remand the case back to the trial court to consider adjustment of status when it became available At the time the motion was filed, the actual relief wasn't available because the I-130 had not been approved It has subsequently been approved in February Adjustment of status under 245 I of the Act would now be available And if the case ever ended up back in front of Judge Pizarro again, they probably wouldn't be talking about this cancellation case at all and they would just go ahead and address the adjustment of status issues But we're here today on the retro... That doesn't moot this appeal out I don't think it does The way this works, and I can't recall a case where I actually dealt with it but this case can proceed in the Sixth Circuit and the petitioner could also move to reopen as opposed to remand There is a technical difference Reopen the case with the green card application attached $110 filing fee and ask that the court now reopen the case based upon a new fact not in evidence at the time which is the approval of the I-130 relative petition I emailed counsel yesterday kind of inquiring, you know, it was done in February, so has this been done? I was advised not, that it's just been outstanding the motion to remand Again, should the court on either that issue or the issue of retroactivity send it back down to the BIA who would then pass it along to the Memphis Immigration Court I can't even see them considering the cancellation Why build a cancellation when you have an adjustment application? What happens if we affirm? If you affirm, I think you can do the same thing That sounds like, you say it's not mooting it out but the same result may occur regardless of whether we affirm or reverse I don't think the issue of the adjustment of status would be mooted out regardless of what this court does You think it would be or would not be? It would not affect the adjustment application It's a separate relief available Unless for some reason this court draws on a theory that I can't even imagine right now I can't see how the decision of the court for or against the petitioner would affect this new application for relief to be presented to the But the relief might not be successful, that's why it's not mooted? That's correct Okay, thank you And of course it would, if for some reason the petitioner on the I-130 would become deceased between now and... Yeah, okay, I see Alright That's my read on the abuse Right So it's not moot, but we can decide this case realizing that it might not actually affect too much this particular plaintiff Alright, please proceed As I say, unless there's any other issues on the abuse standard I don't intend to... Maybe the council decided to run it up a flagpole and see if one of the board members would go for it and remand it back and make it work Didn't happen I could name names of a couple board members who probably have done that That's alright So that brings us to the retroactivity question where the immigration judge pre-terminated the cancellation application based upon the fact that his reading of AEDPA in 1996 and the change in definition and use of the crime of moral turpitude then barred the cancellation even though the act had occurred before the enactment of AEDPA But this application of cancellation, of course, came after the application of AEDPA The court in its communication to council indicated that it wanted council to focus on the cases of St. Cyr, which was a retroactivity Supreme Court case on 212C which is, please forgive me my sins and allow me to stay in the United States if I've been here a certain amount of time And then the Fernandez-Vargas case, which had to do with reinstatement with a respondent who, even though the law changed, sort of just hung around for 15 years before trying to assert that reinstatement really didn't apply to him anyway And then probably more recently, the Vartelis case versus Holder which is a 2012 Supreme Court case That, I think, followed more the lines of St. Cyr dealing with the impact of holding a law retroactive in absence of any directive by Congress I think it's undisputed that when Congress did AEDPA and there are in many respects, but not entirely in all it did not specifically designate AEDPA to be retroactive So, it kind of brings us to the second test that are substantial rights involved It's interesting that it has been held certainly in the Vartelis case that a party is not required to show reliance on the prior law in structuring his conduct which would be, certainly, with most of my clients that would be difficult to show not entirely in the Videla cases I've routinely had the day of showing reliance on advice given In Vartelis, they held that, well, substantial rights here have been effective because of the ability, pursuant to what used to be the old fluency doctrine of being able to make a brief, casual, and innocent departure and then come back in and therefore, they held that a normal test on retroactivity should be that, no, this statute can't be retroactive because it affects substantial rights Probably, I would argue that if the test is that the petitioner or respondent or defendant does not, or can't show reliance on it then you examine, well, is this the type of thing where someone could have reliance on it I certainly know in my own practice that I get weekly phone calls from the criminal bar wanting to know I'm about to plead somebody to hear somebody there a few months ago or I write an opinion letter or most of the time it's usually a five minute phone call with one of my buddies down at the county courthouse wanting to know, should they do this or not If I had gotten a phone call like that in 1995 prior to AEDPA and they said, hey, if this is all right, if I plead him out the shot will be there maybe he's hot dead I go to trial, I lose he's got to get a six month sentence whatever it is, or a year sentence what if I just plead him out we're going to give him diversion or probation or something and then he'll go on his way is this going to mess him up immigration wise prior to IRA, IRA in 1996 I'd probably say no it's not that big a deal it's okay now, when I get those phone calls I'm a lot more cautious in giving the advice the consequences after IRA, IRA have grown substantially more severe than they used to prior to 1996 I don't think, in all those cases I don't think any of them went to trial St. Cyr specifically dealt with someone making a plea with the reliance on the law at the time that it could be I believe so, Your Honor If you go to trial and you lose, you lose your stuff the alternative way you might reconcile these cases is whether there is an ongoing illegal presence in the United States such that St. Cyr and what's the most recent case, Vartelis they say that it's all in the past and he's legally in the United States and now there's this different effect whereas in Fernandez-Vargas the Supreme Court relied on the fact that there was an ongoing violation of the law, I guess you might want to say or ongoing illegal presence in the United States and that made a difference now, whether that's logical difference or not that seems to be the difference that drives and if you apply that doesn't this case fall on the Fernandez-Vargas side of the coin? Do you see my question? I see your question, Your Honor and again, it's in the eyes of the beholder Well, what's it in your eyes, I guess? In my hindsight, the plea on a criminal case back when the shoplifting thing happened you know, the law was such that had he asked for advice which again, is not that uncommon but had the advice been asked for it would have been, don't worry about it, it's okay Okay I see your time is short and I want to ask you a logically preliminary question which is, all of these cases assume that Congress hasn't spoken on the issue but it sure looks like Congress has spoken on the issue in this case doesn't it say, in cases where you know the language I'm referring to and we only have a minute I think in Barteles they distinguish that is that they made it, you know, from cases going forward and that's argued in the respondent's brief in cases going forward, certainly these things apply but still you have the question at the time of the conduct that was prior to HEPA and I think on that point, the Barteles case is right on point I'm not sure I'm following In Barteles, they were applying a we don't know exactly what Congress would want so therefore we go to Landgraf and all these cases to try to figure out what Congress would probably have wanted knowing that it probably wouldn't want retroactivity for substantial rights but the argument here, at least partially made as I understand it is that Congress said this is retroactive to cases that are whatever the standard is in the statute what's the number? 4 well I don't have it at my fingertips here but there is language which says this well it's the amendment made by subsection A shall apply to aliens against whom deportation proceedings are initiated after the date of the enactment of this act thank you Judge Guy what's the number for that? well that's it's either 241A2A12 that's the amendment that's the language I'm asking about it seems to say this change in the statute which changed it from sentenced for one year to committed a crime that could be sentenced for one year that's the difference in the language, right? it's 435B thank you, 435B is what I thought it was alright it says that language shall apply to proceedings after a certain date and this is a proceeding after that date why doesn't that take us out of the three cases that we asked you to look at and just answer the question for us that's my question I see you're out of time I'll just briefly say that I think the substantial rights test applied in Vartelis and St. Cyr would override that particular point that language applied as well in Vartelis? I believe it would ok, thank you no further questions without Ms. Singer may it please the court my name is Jennifer Singer and I represent the United States Attorney General the respondent in this matter before I address the retroactivity issue I just want to briefly address whether the recent adjustment of status approval of the I-130 moots any aspect of the case and it does not at all the petitioner's remedy now with this new piece of evidence would be go before the board and make a motion to reopen and then based on the adjudication of that if he's successful, and he's successful if he's not, then he would file another petition for review in this court is he number barred from filing something like that? he's not number barred he would have to argue new evidence and then the new approval of the I-130 which was not before the board previously does that constitute new evidence for those purposes sometimes? it could be considered new evidence and then there's other things that would go into play with that decision but it would not moot any issue in this case currently turning to the court's order issued asking council to discuss St. Cyr Fernandes Vargas and Vardalos those three cases discussed retroactivity and underscored that if Congress was clear in their intention as to whether a statute had retroactive effect that you would never proceed to step two of the retroactivity analysis and the government submits that in enacting section 435 of EDPA which is the amendment changing the sentencing of what constitutes a CIMT that Congress made its intention clear that it was meant to have retroactive effect did that provision as Mr. Weigel suggests also apply in any of those three cases? I'm sorry did that provision 435B that we're talking about now which arguably is a clear statement of whether it's retroactive or not was it applicable to  Vardalos, Rodriguez, St. Cyr or not? Those three cases addressed provisions of it's a yes or no question that was not specifically addressed in either of those cases. Was it relevant though? Could it have been addressed? Did it refer to provisions that they then went on to say we're going to look at the presumption or not? I mean it's fact specific and you have to look at the language in all the three cases they did not find that the provisions at issue in those three cases that Congress's intention was clear in having retroactive effect while here I think 435 Congress's intention is clear. It seems like it's clear so does that mean that the only way you could mount a successful attack in light of that language is to say that it's unconstitutional to do what they did? If Congress's intention is clear then the analysis stops there. If it was found that Congress's intention was not clear in enacting that provision then you would proceed to step two and even assuming in proceeding to that there's no impermissible retroactive effect. But of course there are exceptions and I'm not suggesting this is the case but there's ex post facto and what not. Just because Congress says something doesn't mean that it is one of those cases. Correct, I guess. Then you would proceed to step two and then do the second step of the retroactivity analysis. But I think in the immigration context with these three cases addressed it made clear that if Congress's intention is clear that Here's my question. I tried to ask before but I'm not sure of the answer and it makes all the difference to me right now. If 435 is clear and therefore you don't have to go to step two and see whether it's substantial rights and all that. Your argument is that it's clear. If in these other cases the lawyers could have based on the statute made that argument and didn't even make it and that's why the Supreme Court never addressed it. That's a different situation in my mind from it didn't apply in those cases. Are you with me? It seems strange that there was clear language which would have obviated their necessity of going to the second step. And now we're going to say well, Supreme Court, you never even needed to do that because there was clear language which applied in those cases. That would be sort of daring on our part. Unless you could distinguish those cases in that respect. Are you with me now? I think I'm following. I mean, the government made the arguments in those cases. One, it was not disputed whether the language was clear or not. In two cases it was disputed whether the provisions under consideration did have clear language and they were found to have not. Did 435B when it says this shall apply to whatever it says, did that language specifically apply to the provisions that were held either to be retroactive or not retroactive in those three cases? No, this specific language was not. That's my question. This specific language was not specifically addressed. Is it not addressed or not at issue? It's not at issue. It's completely different. It doesn't apply to the particular provisions under consideration in those cases. But the provisions at issue in the three Supreme Court cases all involve different statutes with different language. Okay. Thank you. The language that is here is unlike the language in, for example, St. Cyr. They found it, Congress's intention, unclear because, for example, other parts of ARERA had specific retroactive language and the provision repealing 212C did not have the same language. Here, there's provisions in AEDPA that only include respective language and don't include the same respective language with respect to 435A, 435B. In St. Cyr, the court also rejected the government's congressional intent argument based upon its reliance on the effective date provision. ARERA included language saying that the repeal of 212C will become effective on such and such a date. Section 435B doesn't simply say this amendment will take place on April 24, 1996. It does more than that. It says that it will take effect as to all new CIMT sentencing guidelines tomorrow and all proceedings going forward after that. What could that mean if it didn't answer the question in this case? There's no other meaning other than that it's retroactive, right? I agree. Given that, I'll go to the second step of the retroactivity analysis. We don't need to get there, though. I don't believe we need to get there, but I just would like to adjust it to . . . Sure. Judge Gibbons. You've got the time. Does that talk about whatever you want to? St. Cyr also rejected the government's reliance on the statings provision in the enactment of 212C repeal. It rejected that, saying that that provision only addressed procedural rules governing what would happen to people who are in proceedings or put in proceedings on the effective date of the 212C repeal amendment. Here, there's no concern regarding that because it's clear that there's no issue of what would happen to people in proceedings on the effective date, as 435B makes clear that anyone put into proceedings tomorrow and going forward would be under the new regime. Other parts of ARERA under . . . other parts of AEDPA, unlike what the court found in St. Cyr, by not including . . . This case is the opposite of St. Cyr. St. Cyr, the court found that because 212C did not include retroactive language, and other parts of ARERA did include retroactive language, that Congress intended that 212C was not meant to be retroactive. Here, the immigration related provisions of AEDPA, for example, the expanded definition of an aggravated felony in the AEDPA clearly states that the expanded definition will apply to all convictions entered on or before or after the effective date of AEDPA. By not including such prospective language in 435B, it shows Congress's intent to make 435B retroactive. Even assuming that the intent was to make 435B retroactive,  there is no such disability analysis under Vartulis and Fernandez-Vargas. I think the court has made clear that the emphasis in the retroactivity analysis is on whether there's a new disability imposed by the enactment of a statute. Here, there is no such disability, and I would like to note that the petitioner does not identify any new disability that he may have suffered. In his reply brief, he mentions a hypothetical situation, but the facts that he puts forth for that hypothetical are not applicable here. Prior to enactment of 435B, the petitioner was a removable alien and was not eligible for relief. After the passage of 435B, he remains removable and is still ineligible for relief. Cancellation of removal did not exist prior to ADPA. There was suspension of deportation, though, right? There was suspension of deportation. Was the corollary or the previous version of cancellation of removal? That's correct, but at the time of his conviction, he was not eligible for that, as he had not accrued the seven years physical presence. He's not eligible for that now. This is not like the Vartulis case. But at that time, he could have become eligible for it. He could have at some point in the future, but at the time of his conviction... There's a time for cancellation, too, right? You have to have a certain amount of time. There is, but at that point in time of his conviction, cancellation of removal did not even exist. Right, but you had a previous analogue to it. It just seems like that kind of tricky argument you're making. You have suspension of deportation with a number of years that hadn't accumulated yet, which if they did accumulate, he would have been able at least to try to take advantage of, because notwithstanding his guilty plea. And then later, they changed the name and the contours of it somewhat to cancellation of removal with another time limit that he hadn't accumulated yet. But now, if he tried to wait for that time and then try to get it, he would be categorically precluded from it. Is that true? Categorically precluded from From getting the cancellation of removal, which was an analogue or a revision or a renaming and tinkering with of the suspension of deportation that was a future possibility when he entered into... And that's why Mr. Wycliffe, he'd been the consulting immigration attorney in the criminal case, would have said no problem. Won't affect that, if that should ever accrue. I understand you could distinguish it in various ways, but just to say, oh, well, he wasn't entitled to cancellation of removal seems like a kind of a cheap argument. I respectfully disagree. The focus is on a disability and whether there's been a new disability imposed and I don't see how that is. He wasn't eligible for the cancellation precursor suspension because he didn't have the presence. He wasn't eligible for cancellation of removal because it didn't exist. But it was something that he might become eligible for. A hope and a whim is just insufficient to show that there's been some kind of new disability imposed on him. It's not like... It would be something that he might take into account in evaluating the factors. Potentially, but I'd also like to point out that petitioner says that he pled guilty, but the record is a bit unclear on whether he actually entered into a guilty plea. So it can't be said that he did anything with regard to his conviction with some kind of expectation that he would be eligible for relief and let alone relief that didn't even exist at the time. St. Cyr and Vardalos made clear that prior to the enactment of a statute someone was eligible for relief at the time or could engage in some activity after the enactment of the statute issue. The person was no longer eligible for relief or could no longer engage in a certain activity. Here petitioner writes prior to the enactment of EDPA 435 and post are exactly the same. He's removable and eligible for relief. Can I ask a question about St. Cyr? When the Supreme Court said that it was not the statute in issue was not retroactive in part because of this guilty plea concern. They did do that, right? In St. Cyr? Yes. Was their holding then applied only to people who entered guilty pleas or was it applied across the board and the guilty plea factor was just something that helped them decide whether helped the Supreme Court decide whether it was retroactive? At that point in time the guilty plea and the quid pro quo arrangement was one of the main factors because it discussed reliance on But that's not answering my question. My question is then as the immigration agency applied St. Cyr was it applied across the board to people who were in a non-retroactive fashion or was it only non-retroactive with respect to aliens who had entered into guilty pleas? It only applied to aliens who entered guilty pleas. Thank you. I see my time is ending if there's any further questions. I don't think so. Thank you. Judge Rogers, I think the best analogy I heard about going from suspension to removal was by an immigration judge who said that it used to be rounding third and heading for home and then someone moved home plate another 90 feet. But it was still baseball. They didn't switch it to soccer. That's true. It did become a much different animal. My record on suspensions was very admirable and my record on cancellations is a lot less. What do you do with the argument that with respect to my question of whether the language which the Attorney General says is dispositive here without having to get to step two was not language that applied in those three cases? Did it apply or didn't it apply? Well, I think these three cases do apply in so far as the logic that's applied to them. I think there is a certain... I'm not asking whether the logic of it applies. I'm asking whether that 435B by its terms applies to the statutory provision that's at issue in this case. Did it apply by its terms to the statutory provisions at issue in those three cases? No. Different statutes. Our argument is that there still remains a certain ambiguity in 435B. What's the ambiguity? What could it have meant other than resolving this case? The ambiguity is that it refers to removal proceedings initiated after the time of the act, but it does not discuss convictions. Whereas in domestic violence cases... But the language it refers to is language which talks about what you're convicted of. Right? I'm not sure I'm reading it the same way. Well, okay. We'll take a look at it. In certain parts of the act of IRA, they specifically limited certain particular convictions applying domestic violence being the one that immediately comes to mind. If you had a domestic violence at a certain date after the act, it could be a deportable offense. If not, it wasn't. They specifically spoke to that issue. They did not... I don't think they did that to the same degree, anyway, that they did with convictions under EDPA. Granted, IRA-IRA kind of amended EDPA in itself because EDPA came first and then IRA-IRA as part of a great reform package introduced by Lamar Smith of Texas then went a lot farther in a lot of the different areas. I don't think, certainly using the logic of St. Cyr and Vartelis, that the reliance on a conviction prior to the introduction of EDPA should be held against the petition. Obviously, we're asking that it be remanded back to the immigration judge for proceedings that probably won't have anything to do with the cancellation we're talking about. Thank you, Your Honors. We thank you both for your argument and we'll consider the case carefully. Thank you.